"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shaunetta Eddings,<br><br>             Plaintiff,<br><br>       vs.<br><br>Health Net, Inc.,<br><br>             Defendant. | CASE NO. CV 10-1744-JST (RZx)<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.  Introduction

Before the Court is a Motion for Partial Summary Judgment ("Motion") filed by Defendant Health Net, Inc. ("Health Net" or "Defendant"). (Mot., Doc. 170.) Plaintiff Shaunetta Eddings ("Plaintiff") filed an Opposition (Opp'n, Doc. 174),[1] and Defendant filed a Reply (Reply, Doc. 178). After hearing oral argument, the Court granted Plaintiff's request to continue under Rule 56(d) and set a further hearing on Defendant's Motion. (Doc. 197.) On February 13, 2012, Plaintiff filed a Supplemental Opposition. (Supp. Opp'n, Doc. 199.) On February 21, 2012, Defendant filed a Supplemental Brief in support of its Motion. (Doc. 200.) Having heard further oral argument, and read and considered the parties' papers, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Partial Summary Judgment.

## II.  Background

Defendant Health Net is a managed care organization and the parent company of five subsidiaries that maintain call centers in 14 locations in 11 states. (Statement of Undisputed Facts ("SUF") ¶¶ 1-2, Doc. 170-1.) Plaintiff was a customer service representative for Defendant from May 2007 to March 2009. On March 10, 2010, Plaintiff filed suit against Defendant, asserting violation of the Fair Labor Standards Act ("FLSA") and violation of various state law claims. (*See* Second Amended Complaint ("SAC"), Doc. 53.) Plaintiff alleges that Defendant denied her full compensation through a computerized timekeeping system that rounds self-reported time to the detriment of employees ("rounding claims"), and through policies and practices that forced employees to perform unpaid work activities before the start and at the end of their shifts ("off-the-

---

[1] Plaintiff initially filed a redacted version of her Opposition (Doc. 174), and Statement of Genuine Issues (Doc. 174-2.) She subsequently filed an unredacted version of her Opposition (Doc. 191) and Statement of Genuine Issues (Doc. 193.)

clock claims") and during unpaid meal breaks ("meal period claims").  (*See generally* SAC; *see also* Certification Order ("Cert Order") at 2, Doc. 109.)

On September 1, 2010, Plaintiff moved to certify a Rule 23 class of California customer service representatives ("California CSRs") for the state law claims and a nationwide FLSA collective action of customer service representatives ("nationwide CSRs").  (Mot. to Certify, Doc. 35.)  On February 23, 2011, the Court certified a Rule 23 class of "all current and former customer service representatives who worked at Health Net's California call centers within the last four years."  (Cert Order at 29.)  The Court also conditionally certified an FLSA collective action comprised of "customer service representatives who worked in Health Net's call centers nationwide within the last four years."  (*Id.*)  Both the FLSA collective action ("the FLSA class") and the Rule 23 class ("the California class") were certified only as to the rounding claims.  Defendant now seeks partial summary judgment as to the rounding claims and waiting time penalties under California Labor Code § 203.  (Mot. at 1.)

### III.   Legal Standard

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party

moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). The burden then shifts to the non-moving party to "cit[e] to particular parts of materials in the record" supporting its assertion that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

## IV.   Discussion

During the class period, CSRs used two different timekeeping systems, accessed through Health Net's intranet. The first system ("the First Rounding System") was used from March 10, 2006 to July 18, 2008 ("the First Rounding Period"), and the second system ("the Second Rounding System") was implemented on July 19, 2008 and is still used today ("the Second Rounding Period"). (SUF ¶ 5.) Defendant moves for summary judgment on Plaintiff's rounding claims during the First Rounding Period and the Second Rounding Period. Defendant also moves for summary judgment on Plaintiff's claim for waiting time penalties pursuant to California Labor Code § 203.

While no California statute or regulation expressly addresses the permissibility of using a rounding policy to calculate employee work time, the United States Department of Labor has adopted a regulation regarding rounding pursuant to the Fair Labor Standards Act (the "FLSA") that permits employers to use time rounding policies under certain circumstances:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping

>     time to the nearest 5 minutes, or to the nearest one-tenth or
>     quarter of an hour. Presumably, this arrangement averages out
>     so that the employees are fully compensated for all the time
>     they actually work. For enforcement purposes this practice of
>     computing working time will be accepted, provided that it is
>     used in such a manner that it will not result, over a period of
>     time, in failure to compensate the employees properly for all
>     the time they have actually worked.

29 C.F.R. § 785.48(b) (2011).

While few Courts have interpreted this regulation, those that have recognize that the regulation permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not "consistently result[] in a failure to pay employees for time worked." *See, e.g.*, *Sloan v. Renzenberger, Inc.*, No. 10–2508–CM–JPO, 2011 WL 1457368, at *3 (D. Kan. Apr. 15, 2011).

That is, an employer's rounding practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment. *East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) (granting summary judgment in employer's favor where "evidence show[ed] that [employer's] rounding system may not credit employees for all the time actually worked, but it also credits employees for time not actually worked" so that the employer's "rounding practices average[d] out sufficiently to comply with § 785.48(b)"); *see also Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *11 (E.D. Wis. Sept. 11, 2008) (approving policy where there was no evidence to suggest it systematically favored employer); *Contini v. United Trophy Mfg.*, No. 6:06-cv-432-Orl-18UAM, 2007 WL 1696030, at *3 (M.D. Fla. June 12, 2007) (granting employer's motion for summary judgment where the "[employer], throughout [the employee's] employment, [used] a

consistent policy as to the rounding of clocking-in and clocking-out, which [was] both fair and evenly applied to all employees.").

An employer's rounding practices violate § 785.48(b) if they systematically undercompensate employees. *See, e.g.*, *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 820 (N.D. Ill. 2010) (time rounding and log-out policies may violate FLSA if they "cause[] plaintiffs to work unpaid overtime"); *Austin v. Amazon.com, Inc.*, No. C09-1679JLR, 2010 WL 1875811, at *3 (W.D. Wash. May 10, 2010) (denying defendant's motion to dismiss where policy "allows rounding when it benefits the employer without disciplining the employee; but disciplines the employee when the rounding does not work to the employer's advantage"); *Eyles v. Uline, Inc.*, No. 4:08-CV-577-A, 2009 WL 2868447, at *4 (N.D. Tex. Sept. 4, 2009) (granting summary judgment for plaintiff where defendant's rounding policy "encompasses only rounding down"); *Chao v. Self Pride, Inc.*, No. Civ. RDB 03-3409, 2005 WL 1400740, at *6 (D. Md. June 14, 2005) (ruling that employer's practice of rounding employee time down violated FLSA). The Court considers both whether the policy is facially neutral, and whether the policy as applied results in the systematic undercompensation of employees, bearing in mind that the ultimate inquiry is whether the rounding system, over a period of time, "compensate[s] employees properly for all the time they have actually worked." *See Alonzo v. Maximus, Inc.*, --- F. Supp. 2d ----, 2011 WL 6396444, at *4 (C.D. Cal. Dec. 5, 2011).

### a. *First Rounding Period*

The First Rounding System required that CSRs enter the time worked each day on two different computer screens. (SUF ¶ 7.) The first screen, the "Report In/Out Times" webpage, required entries for the time CSRs began work, the time they went on a meal break, the time they returned after a meal period, and the time they stopped working for the day. (SUF ¶ 9.) Health Net's Training Manual for Online Time Reporting System, dated March 15, 2006 ("Training Manual") instructed CSRs to record the exact times they

worked, and to do so on a daily basis. (SUF ¶ 10.) After entering the times they worked, a CSR was required to hit the "Save" button, next to which was language stating that the CSR was certifying that the hours she had entered accurately reflected the time she actually worked. (SUF ¶ 11.) Upon hitting the "Save" button, the total hours were displayed in hours and fractions of an hour (expressed in decimal form) on the "Report In/Out Times" page. (SUF ¶¶ 12-13.) CSRs then recorded their total time worked for the day on a different computer screen, the "Weekly Elapsed Time" webpage. (SUF ¶ 14.) The Training Manual instructed CSRs to "[e]nter the number of hours or partial hours you worked for each day for the week reflected. Remember partial hours are reported only in increments of 15 minutes (.25,.50, or .75)." (Training Manual p. HN02541, Lindner Decl., Ex. B, Doc. 42; *see also* SUF ¶ 15.) CSRs were then paid based on the total time reported on the "Weekly Elapsed Time" page. (SUF ¶ 16.)

Defendant submits the declaration testimony of Debra Taylor, Health Net's Vice President of Organizational Effectiveness, as evidence that Health Net's policy was that time was always to be rounded up in favor of the CSR during this First Rounding Period. (SUF ¶¶ 17, 42.) However, this "round up" policy is not included in the Training Manual, and Defendant provides no evidence that it was otherwise communicated to CSRs. In fact, several CSRs have submitted declarations stating that they were generally told to round down. (*See, e.g.,* Edwards Decl., Doc. 199-4.) Furthermore, in its Opposition to Class Certification, Defendant argued that the rounding policy during the First Rounding Period could have been interpreted differently by different associates (Cert. Order at 22), calling into question whether the policy was, in fact, to always round in the CSR's favor.[2] Therefore, the only undisputed elements of the policy are those contained in the Training

---

[2] At that time, the Court noted that slight variances might exist as to how CSRs rounded their time under the First Rounding System. The Court found that this variation goes to the issue of damages, not to whether Defendant's policy was unlawful. (Cert. Order at 22.)

7

1  Manual, which did not contain the word "round" or specifically provide that employees
2  were to round to the nearest 15-minute interval.
3        The evidence presented by the parties as to the First Rounding System creates a
4  genuine issue of material fact, both as to the facial neutrality of the First Rounding System
5  and to the effects of its application during the First Rounding Period.  Unlike the example
6  of rounding to the nearest quarter hour provided in 29 C.F.R. § 785.48(b), Health Net's
7  timekeeping policy is at best ambiguous as to whether employees are ever allowed to
8  round up.  In fact, one fair reading of the policy is that employees may only record a 15-
9  minute increment if they have actually worked all 15 minutes.
10       Both Plaintiff and Defendant also submit evidence that at least some portion of the
11 CSRs were undercompensated during the First Rounding Period.  According to
12 Defendant's expert, Dr. Krock, 59.2 percent of the California CSRs and 61.3 percent of
13 nationwide CSRs did not experience a loss of pay as a result of the First Rounding System.
14 (SUF ¶ 23.)  The obvious corollary statistic is that approximately 40 percent of workers
15 *did* experience a net loss of pay as a result of the First Rounding System.  Furthermore,
16 Plaintiff's expert concludes that the California class experienced a net loss of 9,862 hours
17 during the First Rounding Period, and the FLSA class experienced a net loss of 6,379
18 hours during this Period.  (Steward Report ¶¶ 11-12, Doc. 174-1.)   While Defendant
19 provides a statistic for the Second Rounding Period that shows a net gain in compensation
20 to employees, it fails to provide such a statistic for the First Rounding Period.  These
21 conclusions by both Defendant's and Plaintiff's experts undermine Defendant's assertion
22 that workers were always to round in their own favor during the First Rounding Period,
23 creating a genuine issue of material fact as to the nature of the policy communicated to
24 employees.  These conclusions also create a genuine issue of material fact as to whether
25 the policy as communicated to workers "consistently resulted in a failure to pay employees
26 for time worked." *See Alonzo*, 2011 WL 6396444, at *3(internal citations and quotations
27 marks omitted).
28

Defendant points to statistics in its favor, such as the fact that "a majority of associates experienced no effect or a net gain of wages as a result of the First Rounding System for a majority of days worked." (Supp. Brief at 7.) At best, this suggests that a majority of the class did not suffer damages from what was otherwise a potentially unlawful rounding policy, but it does not absolve the Defendant of liability at the summary judgment stage for the undercompensation of approximately 40% of the CSRs.

Defendant asserts that it should be entitled to summary judgment regardless of whether its rounding policy was lawful because any uncompensated time is *de minimis*. (Mot. at 12.) Under Ninth Circuit law, courts apply a three-prong standard to determine whether uncompensated periods of time are *de minimis*: (1) "the practical administrative difficulty of recording additional time," (2) "the aggregate amount of compensable time," and (3) "the regularity of the additional work." *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1058-59 (9th Cir. 2010) (internal citations and quotations marks omitted). However, Defendant does not cite any case in which a court has applied the *de minimis* exception when time is rounded away due to a rounding policy, particularly when employees record their exact time and it is that *precise* time that is then made *imprecise* through rounding. In fact, as Defendant itself quotes, courts apply the *de minimis* exception because of the "realities of the industrial world." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984). Here, the reality is that the Defendant had a record of exact time and then used a rounded time for purposes of compensation. The *de minimis* exception is not a broad rule granting employees some number of free minutes of labor per day. The circumstances here are simply not those contemplated by the *de minimis* exception. Accordingly, Defendant's Motion as to the First Rounding Period is DENIED.

### b. *Second Rounding Period*

Under the Second Rounding System, CSRs input their exact in/out times into the timekeeping system. (SUF ¶ 24.) The system then automatically rounds the payable time

increments to five minutes, and totals them. (SUF ¶ 25.) However, the parties dispute the mechanics of the rounding. The training materials provided to employees state that "[t]he system is set up to round to the nearest five minutes . . . ." (Taylor Depo., Ex. 18, Doc. 192, Ex. A.) Defendant has submitted contradictory testimony that in almost all instances, except for time increments of 11, 26, 41, or 56, the system rounds up. (SUF ¶¶ 26-28.) Even accepting the evidence proffered by Plaintiff, as the Court must at summary judgment, the Second Rounding Policy is facially neutral.

Furthermore, Plaintiff submits no evidence that the Second Rounding Policy undercompensated employees during the Second Rounding Period. In fact, Plaintiff does not submit any expert analysis of the impact of the Second Rounding System. Instead, Plaintiff relies on evidence of "self-rounding" to support her claims. The essence of the "self-rounding" evidence is that CSRs were either explicitly told or came to believe that the system would round off their pre- and post-shift time, and therefore, they did not enter their exact in/out times. (*See, e.g.,* Carmona Decl., Doc. 199-4, Attach. 5.) Plaintiff previously alleged this theory in support of her off-the-clock claims. (*See* Cert. Order at 12.) However, the Court denied Plaintiff's motion to certify a class based on these claims. Plaintiff cannot reassert the same theory under the guise of a rounding claim.[3] Accordingly, the Court GRANTS Defendant's Motion as to the Second Rounding Period.

### c. *Waiting Time Penalties*

Defendant also moves for summary judgment on Plaintiff's claim for waiting time penalties pursuant to California Labor Code § 203. Pursuant to California Labor Code § 203, an employer is liable for penalties if it "willfully fails to pay" wages owed to an

---

[3] Plaintiff also asserts the self-rounding theory in support of her claim under the First Rounding System. The Court denies summary judgment on First Rounding Claim on the basis of the rounding policy's lack of facial neutrality and its undercompensation of CSRs based only on the reported in/out times, not the evidence that some CSRs may have self-rounded to their detriment at times.

employee at the time he or she is discharged or quits. Cal. Lab. Code § 203(a). "A willful failure to pay wages within the meaning of [that section] occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, 'a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. tit. 8, § 13520 (2011). A "good faith dispute' . . . occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee." *Id*. "The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id*. However, "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" *Id*.

Here, there is a genuine issue of material fact as to whether Defendant willfully failed to pay wages during the First Rounding Period. As Plaintiff points out, Health Net states that its rounding systems were implemented to comply with 29 C.F.R. § 785.48(b). (Mot. at 17.) Health Net also previously submitted evidence that its supervisors monitored employees' time on a daily basis and approved the time sent to payroll. (*See, e.g.,* Alexander Decl. ¶ 27, Doc. 59, Ex. 2.) Furthermore, as discussed above, Defendant's own evidence in support of its motion for summary judgment shows that approximately 40 percent of CSRs were undercompensated during the First Rounding Period. Viewed in the light most favorable to the Plaintiff, this suggests that Defendant knew that it was undercompensating at least some class members but nonetheless failed to pay those wages. Accordingly, Defendant's Motion is DENIED as to Plaintiff's claim for waiting time penalties.

11

V.   Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion as to the Second Rounding Period, and DENIES Defendant's Motion as to the First Rounding Period and Plaintiff's claim for waiting time penalties.

DATED: March 23, 2012

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE