O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHAUNETTA EDDINGS, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

vs.

HEALTH NET, INC., et al.

Defendants.

CASE NO. CV 10-1744-JST (RZx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND SETTING A FAIRNESS HEARING FOR FRIDAY, MAY 31, 2013, AT 2:30 P.M. (Docs. 212, 213.)**

1

I.      INTRODUCTION

Before the Court is Plaintiff Shaunetta Eddings' ("Plaintiff's") unopposed Motion for Preliminary Approval of Settlement ("Motion").  (Doc. 212.)  The Motion asks the Court to preliminarily approve the proposed settlement, approve the form and method of class notice, and set the schedule for final settlement approval.  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R.. 7-15. Accordingly, the hearing set for January 18, 2013, at 2:30 p.m. is VACATED.  Having reviewed and considered the papers, the Court GRANTS Plaintiff's Motion, orders certain modifications to be made, particularly as to the notice form to class members, and sets a fairness hearing for Friday, May 31, 2013, at 2:30 p.m.

II.     BACKGROUND

On October 6, 2010, Plaintiff filed the operative complaint, the Second Amended Complaint ("SAC"), against Defendants Health Net, Inc.; Health Net of California, Inc.; Health Net Federal Services, LLC; Managed Health Network, Inc.; Health Net of the Northeast, Inc.; Health Net Pharmaceutical Services, Inc. (collectively "Defendants"). Plaintiff's SAC asserted that Defendants violated the Fair Labor Standards Act ("FLSA") and various California state labor laws by failing to pay Plaintiff, and other similarly situated employees, for all time worked, based on time worked "off-the-clock" and Defendants' alleged rounding of timekeeping entries.  (Mem. P. & A. ISO Mot. ("Memo.") at 2, Doc. 212-1.).

On February 23, 2011, the Court conditionally certified a nationwide class under the FLSA based solely on Defendants' timekeeping and rounding policies.  (Doc. 109.)  The Court also certified a class under Plaintiff's state law claims for failure to pay straight-time wages, failure to pay overtime wages, failure to pay all compensation due and owing at termination, failure to provide accurate wage statements, and violation of California

1   Business & Professions Code § 17200, *et seq.* (*Id.*) Plaintiff's other claims were not

2   certified and are retained by her in her individual capacity. (*Id.*)

3         On March 23, 2012, the Court granted in part and denied in part Defendants'

4   motion for partial summary judgment. (Doc. 202.) The Court granted summary judgment

5   against claims arising from the rounding system that was in place after July 19, 2008, and

6   denied summary judgment on claims arising from the timekeeping system between March

7   10, 2006, to July 18, 2008, and also denied the motion as to the claim for failure to timely

8   pay wages due at termination pursuant to California Labor Code § 203. (*Id.*) Plaintiff then

9   filed the instant Motion on September 18, 2012.

10

11   **Terms of the Settlement Agreement**

12         Defendants have agreed to pay $600,000 as the total settlement fund ("Settlement

13   Fund"), without admitting any liability, and to deposit the money with a settlement

14   administrator following approval.[1]  (Jason M. Lindner Decl. ("Lindner Decl. II") Ex. A

15   ("Settlement Agreement") ¶ 45, Doc. 216-2.) Class Members are to be given notice of the

16   Settlement, including an estimate of their recovery, and they have 45 days from the time of

17   the initial mailing of the Class Notice to opt-out of the settlement. (Settlement Agreement

18   ¶¶ 48-51.) Each Class Member who does not opt out will receive a cash payment, with a

19   minimum payment of $25. (*Id.* ¶ 45(d)(v).) Each Class Member's share of the Settlement

20   is based on a *pro rata* share of the funds based on that Class Member's time worked within

21   the relevant time period, his or her rate of pay, and multipliers including whether he or she

22   worked in California, whether he or she opted in to the FLSA claim, and his or her

23   standing as a terminated employee within the applicable statute of limitations period to

24   maintain a claim for penalties under California Labor Code § 203. (*Id.* ¶ 45(d).)

25

26

27       [1] Defendants will also pay the employer's portion of applicable payroll taxes. (*Id.*)

28

1    The Settlement further provides that funds remaining after distribution to Class

2    Members—including checks uncashed after 320 days and checks returned as

3    undeliverable—are to be distributed in *cy pres* to the Legal Aid Society-Employment Law

4    Center.  (*Id.* ¶ 45(e).)

5    Under the Settlement, Plaintiff's counsel may apply for up to one-third of the

6    Settlement Fund (*i.e.*, $200,000), and Defendants agree to not oppose such a motion.  (*Id.* ¶

7    45(a).)  Plaintiff's counsel also has the right to seek an "enhancement award" of up to

8    $6,000 for Plaintiff Shaunetta Eddings, based on her service as class representative and in

9    consideration for her execution of a general release.  (*Id.* ¶ 45(b).)

10   Class Members who do not opt-out agree to release Defendants from liability for all

11   claims related to rounding of time, including self-rounding, during the period before July

12   18, 2008 for unpaid wages, excluding the FLSA claims of Class Members who did not

13   affirmatively opt-in to this lawsuit.  (*Id.* ¶ 43(a).)

14

15   **III.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

16   Rule 23(e)(2) requires the Court to determine whether the proposed settlement is

17   fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed

18   settlement typically proceeds in two stages, with preliminary approval followed by a final

19   fairness hearing.  Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th

20   ed. 2004).

21   To determine whether a settlement agreement is fair, adequate, and reasonable, "a

22   district court must [ultimately] consider a number of factors, including: the strength of

23   plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the

24   risk of maintaining class action status throughout the trial; the amount offered in

25   settlement; the extent of discovery completed, and the stage of the proceedings; the

26

27

28

4

1    experience and views of counsel; the presence of a governmental participant;[2] and the

2    reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d

3    938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative

4    degree of importance to be attached to any particular factor will depend upon and be

5    dictated by the nature of the claims advanced, the types of relief sought, and the unique

6    facts and circumstances presented by each individual case."  *Officers for Justice v. Civil*

7    *Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole,

8    rather than the individual component parts, that must be examined for overall fairness, and

9    the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (quoting *Hanlon*

10   *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks

11   omitted)).

12        Moreover, at this preliminary stage and because class members will receive an

13   opportunity to be heard on the settlement, "a full fairness analysis is unnecessary . . . ."

14   *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks

15   omitted).  Instead, preliminary approval and notice of the settlement terms to the proposed

16   class are appropriate where "[1] the proposed settlement appears to be the product of

17   serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not

18   improperly grant preferential treatment to class representatives or segments of the class,

19   and [4] falls with the range of *possible* approval . . . ." *In re Tableware Antitrust Litig.*, 484

20   F. Supp. 2d 1078, 1079 (N.D. Cal.2007) (internal quotation and citation omitted)

21   (emphasis added); *see also Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal.

22   2007) ("To determine whether preliminary approval is appropriate, the settlement need

23   only be *potentially* fair, as the Court will make a final determination of its adequacy at the

24   hearing on Final Approval, after such time as any party has had a chance to object and/or

25   opt out.") (emphasis in original).

26   _____

27        [2] This factor does not apply to the case.

28

1    In any event, the Court evaluates all applicable factors below and finds that the

2  Settlement Agreement should be preliminarily approved.

3    **A.  Arms-length Negotiations**

4    The parties participated in a mediation session on June 23, 2011, with Michael J.

5  Loeb, Esq.  (Lindner Decl. ("Lindner Decl I") ¶ 2, Doc. 212-2; Memo. at 2-3.)  While the

6  parties did not reach a settlement at that time, Mr. Loeb "has been continually involved in

7  facilitating settlement discussions" and ultimately helped the parties reach a resolution.

8  (Memo. at 2.)  Moreover, this case has been vigorously litigated, culminating in a ruling on

9  a dispositive motion.    At this point, the Court is satisfied that the Settlement Agreement is

10  the result of sufficient arms-length, noncollusive, and informed negotiations.

11    **B.  Strength of Plaintiff's Case and the Amount Offered in Settlement**

12    Plaintiff notes that, although she believes her case has serious merit, significant

13  risks are inherent in trials.  (Memo. at 10.)  Indeed, Plaintiff argues that a "wage and hour

14  class action involving analysis of timekeeping systems is complex in and of itself, and

15  such complexity adds to the risk of confusion if this case were to be tried in front of a

16  jury."  (*Id.*)  Defendants have shown that they are committed to thoroughly litigating this

17  case.  Thus, at this point, the proposed settlement strikes a balance between Plaintiffs'

18  claims and Defendants' defenses.  The Court concludes that the parties' decision to reach a

19  settlement in this matter was reasonable.

20    When compared to the strength (and weaknesses) of Plaintiff's case, the Court finds

21  that the settlement amount of $600,000 is fair, adequate, and reasonable under the

22  circumstances.  Considering the present value of the settlement amount, the probability of

23  further expensive litigation in the absence of settlement, the risk that Plaintiff and the class

24  would not have succeeded at trial, and the risk that the jury might award lesser damages,

25  the Court finds the settlement amount for disbursement to class members within the range

26  of reasonableness.

27

28

Case 2:10-cv-01744-JST -RZ   Document 219   Filed 01/16/13   Page 7 of 14   Page ID
#:2885

1    Relatedly, the Court finds the plan of allocation of the settlement funds to be

2  reasonable. *In re Citric Acid Antitrust Litig*., 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)

3  ("Approval of a plan for the allocation of a class settlement fund is governed by the same

4  legal standards that are applicable to approval of the settlement:  the distribution plan must

5  be 'fair, reasonable and adequate.'") (citation omitted).  Here, the division of the funds

6  between the participating class members based on time worked, pay rate, and multipliers

7  including whether they worked in California appears reasonable.

8    At present, Plaintiff has not made a sufficient showing as to attorneys' fees by the

9  submitted declaration.  Plaintiff's counsel's declaration makes no representation as to

10  hours worked or billing rates.  Moreover, Plaintiff's counsel seeks one-third of the total

11  settlement amount in fees even though 25% of the common fund is a benchmark for fees in

12  the Ninth Circuit.  *See*, *e.g*., *Hanlon*, 150 F.3d at 1029 ("This circuit has established 25%

13  of the common fund as the benchmark award for attorney fees.").  While Plaintiff's

14  counsel has provided authorities approving 33% in wage-and-hour cases, Plaintiff's

15  counsel will have to provide evidence to justify an upward departure from the Ninth

16  Circuit's fees benchmark.  The Court also notes that there is no reason to suspect *Hanlon*'s

17  25% benchmark is outdated.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

18  935, 942 (9th Cir. 2011) ("Where a settlement produces a common fund for the benefit of

19  the entire class, . . . . courts typically calculate 25% of the fund as the 'benchmark' for a

20  reasonable fee award, *providing adequate explanation in the record* for any 'special

21  circumstances' justifying a departure.") (emphasis added).  An application for a service

22  award for Eddings will similarly need to be supported by evidence justifying the amount

23  sought.  In short, as part of the motion for attorneys' fees and other related costs, the

24  parties must provide the Court with more detailed documentation as to fees, actual

25  litigation expenses and settlement administration costs incurred, and any updated

26  information as to Plaintiff's continued participation in the settlement process pertinent to

27  the service award.

28

7

1      The amount of the settlement also appears fair, adequate, and reasonable in light of

2  the claims released by the participating class members and those class members who fail to

3  exclude themselves from the Settlement Agreement.  The proposed agreement will release

4  class members' wage and hour claims only as they relate to rounding of time, and will not

5  release all potential employment claims.[3]  (*See* Settlement Agreement ¶ 43(a).)  In

6  addition, the Settlement Agreement ensures that only participating class members will

7  release any potential FLSA claims against Defendants.  (*Id.*)

8      The *cy pres* distributions also appear to be appropriate.  Pursuant to the Settlement

9  Agreement, any funds remaining after distribution to class members are to be distributed in

10  *cy pres* to the Legal Aid Society-Employment Law Center.  (Settlement Agreement ¶

11  45(e).)  Similarly, any funds remaining from the $55,000 allocated to cover the Settlement

12  Administrator's costs are also set to be distributed in *cy pres* to the Legal Aid Society-

13  Employment Law Center.  (*Id.* ¶ 45(c).)  The Ninth Circuit has established clear standards

14  on *cy pres* distributions in class-action settlements.  "Not just any worthy recipient can

15  qualify as an appropriate *cy pres* beneficiary."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865

16  (9th Cir. 2012).  Instead there must be "a driving nexus between the plaintiff class and the

17  *cy pres* beneficiaries."  *Id.* (quoting *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir.

18  2011).).  "A *cy pres* award must be guided by (1) the objectives of the underlying statute(s)

19  and (2) the interests of the silent class members, and must not benefit a group too remote

20  from the plaintiff's class."  *Id.* (internal citations and quotation marks omitted).

21      The class action in *Dennis* involved alleged false advertising by Kellogg in

22  violation of California's Unfair Competition Law and Consumer Legal Remedies Act.  As

23  part of the settlement, Kellogg agreed to distribute $5 million in food to charities dedicated

24  to feeding the hungry.  The court noted that "[t]his noble goal [of feeding the hungry],

25  however, has little or nothing to do with the purposes of the underlying lawsuit or the class

26

27      [3] Per the Settlement Agreement, Eddings will execute a general release.  (*See id.* ¶ 44.)

28

1    of plaintiffs involved."  *Id.* at 866 (internal citation and quotation marks omitted).  The

2    court continued: "Thus, appropriate *cy pres* recipients are not charities that feed the needy,

3    but organizations dedicated to protecting consumers from, or redressing injuries caused by,

4    false advertising."  *Id.* at 867.

5           Accordingly, in the instant case, an appropriate charity is one that is "dedicated to

6    protecting [workers] from, or redressing injuries caused by," violations of labor laws.  The

7    Legal Aid Society – Employment Law Center ("LAS-ELC") has as its mission

8    "promot[ing] the stability of low-income and disadvantaged workers" by "[u]sing the law

9    as a tool."  (Linder Decl. Ex. B (excerpts from LAS-ELC's website), Doc. 216-3.)  The

10   LAS-ELC has, *inter alia*, a Wage and Hour Program that works "to ensure that all workers

11   benefit from laws that regulate pay and work hours."  (*Id.*)  Moreover, the "Program's goal

12   is to educate workers about their wage-and-hour rights."  (*Id.*)  The Program provides

13   information to workers through "fact sheets, self-help guides, presentations, and legal

14   advice," and the group "helps protect workers from unlawful practices by providing them

15   with the tools to advocate on their own behalf."  (*Id.*)  Finally, the LAS-ELC engages in

16   class-action litigation on behalf of workers with wage claims in both state and federal

17   courts.  (*Id.*)  The Legal Aid Society – Employment Law Center is a suitable *cy pres*

18   recipient in this case.

19          **C.  Likely Expense and Duration of Further Litigation**

20          The next stage of this litigation is the last—trial.  Thus, if settlement were not

21   reached, Plaintiff and class members would likely incur additional costs in preparing for

22   and participating in trial.  The Court finds that this factor favors preliminary approval of

23   the Settlement Agreement.

24          **D.  Extent of Discovery Completed**

25          This factor requires the Court to evaluate whether "the parties have sufficient

26   information to make an informed decision about settlement."  *Linney v. Cellular Alaska*

27   *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  In this case, discovery has been completed—

28

1  indeed, a dispositive motion was brought.  Plaintiff's counsel represents that the parties

2  engaged in "significant analysis" of the data Defendants produced, and that Plaintiff's

3  counsel has analyzed the payroll and timekeeping data.  (Lindner Decl. I ¶ 3.)  Plaintiff

4  also argues that the because the operation of the rounding system at issue is largely

5  mechanical, "the data has lent itself to a fair estimation of the Class Members' claims."

6  (Memo. at 9.)  As a result, the Court finds that this factor favors preliminarily approving

7  the Settlement Agreement.

8          **E.  Risk of Maintaining Class Certification**

9          Although Plaintiff makes passing reference to Defendants' vigorous defense of this

10  case on the merits, the parties do not provide the Court with any specific risks of

11  maintaining class certification throughout the litigation.  Hence, the Court need not

12  consider this factor for settlement purposes.  *See In re Veritas Software Corp. Sec. Litig.,*

13  No. C-03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring

14  neither approval nor disapproval of settlement where the court was "unaware of any risk

15  involved in maintaining class action status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir.

16  2007); *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974 WBS GGH, 2010 WL

17  2889728, at *7 (E.D. Cal. July 21, 2010) (favoring neither approval nor disapproval of

18  settlement where the court was "unaware of any specific difficulty in maintaining class-

19  action status were [the] case to continue to trial").

20          **F.  Experience and Views of Counsel**

21          Plaintiff's counsel have experience serving as plaintiff's counsel in class actions,

22  and they and Defendants' counsel have fully endorsed the Settlement Agreement as fair,

23  reasonable, and adequate.  (Memo. at 1; Defs.' Notice Non-Opp'n at 1, Doc. 214.)  This

24  factor weighs in favor of preliminarily approving the Settlement Agreement.

25          **G.  Reaction of Class Members to Proposed Settlement**

26          As of yet, Plaintiff provides no evidence regarding class members' reaction to the

27  proposed settlement.  However, the Court recognizes that the lack of such evidence is not

28

10

1  uncommon at the preliminary approval stage.  Prior to the fairness hearing, Plaintiff's

2  counsel shall submit a sufficient number of declarations from class members discussing

3  their reactions to the proposed settlement, as well as a declaration from Plaintiff setting

4  forth her reaction to the settlement.

5

6  **IV.    PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND**

7  **METHOD**

8          For a class certified under Rule 23(b)(3), "the court must direct to class members

9  the best notice that is practicable under the circumstances, including individual notice to all

10 members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

11 However, actual notice is not required.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

12 1994).

13         The Settlement Agreement requires that, within thirty days of entry of the

14 preliminary approval order, Defendants will provide (in an encrypted format) the

15 Settlement Administrator with a list of Class Members, which identifies each Class

16 Members' Social Security number, last-known address, and the dates of his or her

17 employment as a Class Member during the Class Period.  (Settlement Agreement ¶ 48.)

18 Within twenty days of receiving that list, the Settlement Administrator will mail the Class

19 Notice.  (*Id.* ¶ 48(a).)  The Settlement Administrator will use "skip tracing" and National

20 Change of Address searches.  (*Id.*¶ 48(c).)  Additionally, the Settlement Administrator will

21 re-mail any Class Notice returned with a forwarding address.  (*Id.* ¶ 48(b).)  Notice by mail

22 has been found by the Supreme Court to be sufficient if the notice is "reasonably

23 calculated . . . to apprise interested parties of the pendency of the action and afford them an

24 opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339

25 U.S. 306, 314 (1950).  *Accord Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-

26 JST (ANx), 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*).

27

28

1    Plaintiff has provided the Court with a copy of the revised proposed notice.

2  (Settlement Agreement, Ex. A.)  Under Rule 23, the notice must include, in a manner that

3  is understandable to potential class members, "(i) the nature of the action; (ii) the

4  definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class

5  member may enter an appearance through an attorney if the member so desires; (v) that the

6  court will exclude from the class any member who requests exclusion; (vi) the time and

7  manner for requesting exclusion; and (vii) the binding effect of a class judgment on

8  members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed notice includes

9  this necessary information.  (*See* Settlement Agreement Ex A.)

10    The Court requires the Notice to be modified as follows:

11    (1) The following sentence should be added after the second sentence of numbered

12        Section 4 on the third page of the Notice: "Class Counsel will file their motion

13        for such attorney's fees, costs, and service enhancement for the Named Plaintiff

14        no later than 15 days before the date by which you must opt out of the settlement

15        or object to the settlement's terms."  *See In re Mercury Interactive Corp. Sec.*

16        *Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (holding that district court must set

17        a settlement schedule that provides the class an adequate opportunity to review

18        and prepare objections to class counsel's *completed* fee motion).

19    (2) In Section 9, the Notice should state that the Motion for Attorneys' Fees,

20        Litigation Costs and Expenses, and Class Representative's Enhancement Award

21        will be available for review as part of the Court's files in this matter at the

22        Office of the Clerk of Court or via PACER.

23    The parties must provide the Court within **10 days** of this order an updated copy of

24  the Notice reflecting the changes identified above.

25    Finally, the Court requires that the Motion for Final Approval of the Settlement and

26  Motion for Attorneys' Fees, Litigation Costs and Expenses, and Class Representative's

27  Enhancement Award be filed with the Court no later than **15 days** *before* the time for

28

12

1   Class Members to object or seek exclusion.  In addition, the parties are required to file with

2   the Court a brief responding to any submitted objections and otherwise summarizing the

3   class members' participation in the Settlement and the settlement administration to date no

4   later than **15 days** *after* the expiration of the time for Class Members to object or seek

5   exclusion.

6          In their papers for final approval of the settlement, the parties must include a

7   declaration reflecting that they provided appropriate notice of the proposed settlement to

8   relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days

9   prior to the date for the final fairness hearing.  28 U.S.C. § 1715(d).  *True v. Am. Honda*

10  *Motor Co*., 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class

11  Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the

12  appropriate State official of each State in which a class member resides and the appropriate

13  Federal official.'" (quoting 28 U.S.C § 1715(b)).

14

15  **V.      CONCLUSION**

16         Accordingly, the Court preliminarily approves the Settlement Agreement and

17  approves the form and method of class notice with the modifications outlined in this

18  order.[4]

19         The Court therefore sets the following schedule:

20         • Deadline to provide Class Member information to Settlement Administrator:

21            30 calendar days from entry of the preliminary approval Order;

22

23

24       [4] The Court approves the appointment of Simpluris, Inc. ("Simpluris") as Settlement
25  Administrator.  (*See* Settlement Agreement ¶ 31 ("'Settlement Administrator' shall mean
    Simpluris, a neutral third-party administrator, or such other neutral administrator as chosen by the
26  parties and approved by the Court.").)  Plaintiff's counsel has used Simpluris before and
    represents that it Simpluris is experienced and will "effectively administer this settlement."  (Jt.
27  Suppl. Br. at 2, Doc. 216.)

28

- Deadline to disseminate Class Notice: 50 calendar days from entry of the preliminary approval Order;
- Filing of Motion for Attorney's Fees and Costs and Service Payment: 30 calendar days from mailing of Class Notice;
- Deadline for Class members to file objections, if any, or to opt out of the Settlement: 45 calendar days from mailing of Class Notice;
- Filing of Motion for Final Approval and a brief in response to any objections by Class members, which also summarizes the settlement administration to date: 60 calendar days from mailing of Class Notice;
- Final Approval Hearing: **May 31, 2013, at 2:30 p.m.**

This preliminary approval order is also conditioned upon the parties providing the Court within **10 days** of this Order an updated copy of the Notice and related forms reflecting the changes identified above.

The Court reserves the right to continue the date of the fairness hearing without further notice to class members.  The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement Agreement.

DATED: January 16, 2013

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE