O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHAUNETTA EDDINGS, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

HEALTH NET, INC., et al.

Defendants.

CASE NO. CV 10-1744-JST (RZx)

**ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL SETTLEMENT APPROVAL AND (2) PLAINTIFF'S APPLICATION FOR ATTORNEYS FEES, COSTS, AND ENHANCEMENT AWARD**

1    Before the Court is Plaintiff Shaunetta Eddings' Unopposed Motion for Final

2   Approval of Settlement ("Settlement Motion") and an Unopposed Application for

3   Attorneys Fees, Costs, and Service Award ("Attorney's Fees Motion").  (Settlement Mot.,

4   Doc. 226;  Fees Mot., Doc. 225.)  The Court also ordered supplemental briefing to further

5   substantiate Plaintiff's counsel's request for costs.  Having reviewed the papers, held a

6   fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiff's

7   Motions.

8

9                                    **BACKGROUND**

10    On October 6, 2010, Plaintiff filed the operative complaint, the Second Amended

11   Complaint ("SAC"), against Defendants Health Net, Inc.; Health Net of California, Inc.;

12   Health Net Federal Services, LLC; Managed Health Network, Inc.; Health Net of the

13   Northeast, Inc.; Health Net Pharmaceutical Services, Inc. (collectively "Defendants").

14   Plaintiff's SAC asserted that Defendants violated the Fair Labor Standards Act ("FLSA")

15   and various California state labor laws by failing to pay Plaintiff, and other similarly

16   situated employees, for all time worked, based on time worked "off-the-clock" and

17   Defendants' alleged rounding of timekeeping entries.  (Mem. P. & A. ISO Mot. ("Memo.")

18   at 2, Doc. 212-1.)

19    On February 23, 2011, the Court conditionally certified a nationwide class under the

20   FLSA based solely on Defendants' timekeeping and rounding policies.  (Doc. 109.)  The

21   Court also certified a class under Plaintiff's state law claims for failure to pay straight-time

22   wages, failure to pay overtime wages, failure to pay all compensation due and owing at

23   termination, failure to provide accurate wage statements, and violation of California

24   Business & Professions Code § 17200, *et seq*.  (*Id.*)  Plaintiff's other claims were not

25   certified and are retained by her in her individual capacity.  (*Id.*)

26    On March 23, 2012, the Court granted in part and denied in part Defendants'

27   motion for partial summary judgment.  (Doc. 202.)  The Court granted summary judgment

28

1    against claims arising from the rounding system that was in place after July 19, 2008, and

2    denied summary judgment on claims arising from the timekeeping system between March

3    10, 2006, to July 18, 2008, and also denied the motion as to the claim for failure to timely

4    pay wages due at termination pursuant to California Labor Code § 203.  (*Id.*)

5          On September 18, 2012, Plaintiff filed an unopposed motion for preliminary

6    approval of a class settlement, which the Court ultimately granted on January 16, 2013.

7    (Approval Order, Doc. 219.)[1]

8          Following the Court's preliminary approval of the parties' settlement, the parties'

9    Claims Administrator issued notice to the class pursuant to the terms of the Settlement

10   Agreement.  (Settlement Mot. Mem. P. & A. at 1, Doc. 226-1.)  This included an estimate

11   of the class members' recovery and provided an opportunity to opt-out.  (*Id.* at 2.)  Six

12   class members have opted out of the settlement; none has filed an objection.  (*Id.* at 1.)

13         Under the Settlement Agreement, Defendants have agreed to pay $600,000 as the

14   total settlement fund ("Settlement Fund"), without admitting any liability, and to deposit

15   the money with a settlement administrator following approval.  (Jason M. Lindner Decl.

16   ("Lindner Decl. II") Ex. A ("Settlement Agreement") ¶¶ 39, 45, Doc. 216-2.) [2]  Each Class

17   Member who did not opt out will receive a cash payment, with a minimum payment of

18   $25.  (*Id.* ¶ 45(d)(v).)  Each Class Member's share of the Settlement is based on a *pro rata*

19   share of the funds based on that Class Member's time worked within the relevant time

20   period, his or her rate of pay, and multipliers including whether he or she worked in

21   California, whether he or she opted in to the FLSA claim, and his or her standing as a

22   terminated employee within the applicable statute of limitations period to maintain a claim

23   for penalties under California Labor Code § 203.  (*Id.* ¶ 45(d).)

24   _____

25         [1] The Court previously ordered supplemental briefing from the parties and required a change to
the proposed *cy pres* recipient in the Settlement Agreement in light of the Ninth Circuit Court of
26   Appeal's *cy pres* jurisprudence.  *See, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir.
2012).
27         [2] Defendants will also pay the employer's portion of applicable payroll taxes.  (*Id.*)

28

1   The Settlement further provides that funds remaining after distribution to Class

2   Members—including checks uncashed after 320 days and checks returned as

3   undeliverable—are to be distributed in *cy pres* to the Legal Aid Society-Employment Law

4   Center.  (*Id.* ¶ 45(e).)

5   Under the Settlement, Plaintiff's counsel may apply for up to one-third of the

6   Settlement Fund (*i.e.*, $200,000), and Defendants agree to not oppose such a motion.  (*Id.* ¶

7   45(a).)  Plaintiff's counsel also has the right to seek an "enhancement award" of up to

8   $6,000 for Plaintiff Shaunetta Eddings, based on her service as class representative and in

9   consideration for her execution of a general release.  (*Id.* ¶ 45(b).)

10  Class Members who do not opt-out agree to release Defendants from liability for all

11  unpaid wage claims related to rounding of time, including self-rounding, during the period

12  before July 18, 2008, excluding the FLSA claims of Class Members who did not

13  affirmatively opt-in to this lawsuit.  (*Id.* ¶ 43(a).)

14

15                      **FINAL APPROVAL OF SETTLEMENT**

16  **I.    LEGAL STANDARD**

17         Before approving a class-action settlement, Rule 23 of the Federal Rules of

18  Civil Procedure requires the Court to determine whether the proposed settlement is fair,

19  reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement

20  agreement meets these standards, a district court must consider a number of factors,

21  including:  [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely

22  duration of further litigation; [3] the risk of maintaining class action status throughout the

23  trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the

24  stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a

25  governmental participant;[3] and [8] the reaction of the class members to the proposed

26  _____

27     [3] This factor does not apply to this case.

28

4

1 settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and

2 quotation marks omitted).  "The relative degree of importance to be attached to any

3 particular factor will depend upon and be dictated by the nature of the claim(s) advanced,

4 the type(s) of relief sought, and the unique facts and circumstances presented by each

5 individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

6 1982).  "It is the settlement taken as a whole, rather than the individual component parts,

7 that must be examined for overall fairness, and the settlement must stand or fall in its

8 entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

9 (9th Cir. 1998)).

10 **II.   DISCUSSION**

11       A consideration of the above-enumerated factors favors final approval of the

12 proposed settlement.

13       **A.  _Strength of Plaintiff's Case_**

14       As noted in the Court's Order Granting Preliminary Approval, Plaintiff believes her

15 case has serious merit.  But Plaintiff also notes that that a "wage and hour class action

16 involving analysis of timekeeping systems is complex in and of itself, and such complexity

17 adds to the risk of confusion if this case were to be tried in front of a jury."  (Settlement

18 Mot. Mem. P. & A. at 6, Doc. 226-1.)  Defendants have shown that they are committed to

19 vigorously litigating this case; indeed, they narrowed Plaintiff's claims at both the class

20 certification and summary judgment stages.

21       This factor weighs in favor of approval.

22       **B.  _Likely Expense and Duration of Further Litigation_**

23        The next stage of this litigation is the last—trial.  Thus, if settlement were not

24 reached, Plaintiff and class members would likely incur additional costs in preparing for

25 and participating in trial.  The Court finds that this factor favors approval of the Settlement

26 Agreement.  "Settlement avoids the complexity, delay, risk and expense of continuing with

27 the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

28

1    class."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL

2    1687832, at *10 (N.D. Cal. Apr. 22, 2010) (internal citation and quotation omitted).

3         **C.  *Risk of Maintaining Class Certification***

4         The Court is not aware of any specific risks in maintaining class certification

5    through the litigation.  Accordingly, the Court need not consider this factor for settlement

6    purposes.  *See In re Veritas Software Corp. Sec. Litig.,* No. C-03-0283 MMC, 2005 WL

7    3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring neither approval nor disapproval of

8    settlement where the court was "unaware of any risk involved in maintaining class action

9    status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir. 2007); *Murillo v. Pac. Gas & Elec.*

10   *Co.*, No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010)

11   (favoring neither approval nor disapproval of settlement where the court was "unaware of

12   any specific difficulty in maintaining class-action status were [the] case to continue to

13   trial").

14        **D.  *Amount Offered in Settlement***

15        When compared to the strength (and weaknesses) of Plaintiff's case, the Court finds

16   that the settlement amount of $600,000 is fair, adequate, and reasonable under the

17   circumstances.  Considering the present value of the settlement amount, the probability of

18   further expensive litigation in the absence of settlement, the risk that Plaintiff and the class

19   would not have succeeded at trial, and the risk that the jury might award lesser damages,

20   the Court finds the settlement amount for disbursement to class members within the range

21   of reasonableness.

22        Relatedly, the Court finds the plan of allocation of the settlement funds to be

23   reasonable.  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)

24   ("Approval of a plan for the allocation of a class settlement fund is governed by the same

25   legal standards that are applicable to approval of the settlement:  the distribution plan must

26   be 'fair, reasonable and adequate.'") (citations omitted).  Here, the division of the funds

27

28

1  between the participating class members based on time worked, pay rate, and multipliers,

2  including whether they worked in California, appears reasonable.

3       The amount of the settlement is also fair, adequate, and reasonable in light of the

4  claims released by the participating class members and those class members who fail to

5  exclude themselves from the Settlement Agreement.  The proposed agreement will release

6  class members' wage and hour claims only as they relate to rounding of time, and will not

7  release all potential employment claims.[4]  (*See* Settlement Agreement ¶ 43(a).)  In

8  addition, the Settlement Agreement ensures that only participating class members will

9  release any potential FLSA claims against Defendants.  (*Id.*)

10       The *cy pres* distributions are also appropriate.  Pursuant to the Settlement

11  Agreement, any funds remaining after distribution to class members are to be distributed in

12  *cy pres* to the Legal Aid Society-Employment Law Center.  (Settlement Agreement ¶

13  45(e).)  Similarly, any funds remaining from the $55,000 allocated to cover the Settlement

14  Administrator's costs are also set to be distributed in *cy pres* to the Legal Aid Society-

15  Employment Law Center.  (*Id.* ¶ 45(c).)

16       The Ninth Circuit has established clear standards on *cy pres* distributions in class-

17  action settlements.  "Not just any worthy recipient can qualify as an appropriate *cy pres*

18  beneficiary."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).  Instead there

19  must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries."  *Id.*

20  (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)).  "A *cy pres* award

21  must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

22  silent class members, and must not benefit a group too remote from the plaintiff's class."

23  *Id.* (internal citations and quotation marks omitted).

24       As the Court explained in the Approval Order, in the instant case, an appropriate

25  charity is one that is "dedicated to protecting [workers] from, or redressing injuries caused

26

27     [4] Per the Settlement Agreement, Eddings will execute a general release.  (*See* Settlement Agreement ¶ 44.)

28

1    by," violations of labor laws.  The proposed *cy pres* award comports with those principles.

2    As the Court previously explained:

3
4    The Legal Aid Society – Employment Law Center ("LAS-ELC") has as its
     mission "promot[ing] the stability of low-income and disadvantaged
     workers" by "[u]sing the law as a tool."  The LAS-ELC has, *inter alia*, a
5    Wage and Hour Program that works "to ensure that all workers benefit
     from laws that regulate pay and work hours."  Moreover, the "Program's
6    goal is to educate workers about their wage-and-hour rights."  The Program
7    provides information to workers through "fact sheets, self-help guides,
     presentations, and legal advice," and the group "helps protect workers from
8    unlawful practices by providing them with the tools to advocate on their
     own behalf."  Finally, the LAS-ELC engages in class-action litigation on
9    behalf of workers with wage claims in both state and federal courts.  The
     Legal Aid Society – Employment Law Center is a suitable *cy pres* recipient
10   in this case.

11

12   (Approval Order at 9 (docket citations omitted).)

13       *E.  Extent of Discovery Completed*

14       This factor requires the Court to evaluate whether "the parties have sufficient

15   information to make an informed decision about settlement."  *Linney v. Cellular Alaska*

16   *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  In this case, discovery has been completed—

17   indeed, a dispositive motion was brought, and the Court has ruled on it.  Plaintiff's counsel

18   represents that the parties engaged in "significant analysis" of the data Defendants

19   produced, and that Plaintiff's counsel has analyzed the payroll and timekeeping data.

20   (Lindner Decl. II ¶ 3, Doc. 226-2.)  Plaintiff also argues that because the operation of the

21   rounding system at issue is largely mechanical, "the data readily lent itself to estimation of

22   the fair value of Class Members' claims."  (Settlement Mot. Memo. P. & A. at 9.)

23       The Court finds that this factor favors approval of the Settlement Agreement.

24       *F.  Experience and Views of Counsel*

25       As the Court noted in the Approval Order, Plaintiff's counsel has extensive

26   experience serving as counsel in class actions, and—along with Defendants' counsel—

27

28

1  they have fully endorsed the settlement agreement as fair, reasonable, and adequate.

2  (Approval Order at 10.)

3            ***G.  Reaction of Class Members to Proposed Settlement***

4        Class members have reacted positively to the proposed settlement—none filed an

5  objection and only six requested to be excluded from the settlement.  (Neila Pourhashem

6  Decl. ¶¶ 7-11, Doc. 226-5.)  The Court is satisfied that the lack of objections and only six

7  requests for exclusion evinces a positive reaction by the Class Members to the proposed

8  settlement.

9

10                               **ATTORNEY'S FEES**

11       The Settlement Agreement authorizes Plaintiff's counsel to request attorneys' fees

12 up to the amount of 33 1/3% of the common fund, and in the preliminary approval stage

13 this Court cautioned that "Plaintiff's counsel will have to provide evidence to justify an

14 upward departure from the Ninth Circuit's fees benchmark."  (Approval Order at 7.)  In its

15 subsequently filed application, Plaintiff's counsel seeks an award of attorneys' fees of

16 $150,000.00, or 25% of the Settlement Fund.  (Settlement Agreement ¶ 4; Fees Mot. at 4.)

17 Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law

18 or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent

19 obligation to ensure that the award, like the settlement itself, is reasonable, even if the

20 parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*,

21 654 F.3d 935, 941 (9th Cir. 2011).

22       The benchmark for a fee award in a common fund case is 25% of the recovery

23 obtained.  *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 ("Where a settlement

24 produces a common fund for the benefit of the entire class, . . . . courts typically calculate

25 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate

26 explanation in the record for any 'special circumstances' justifying a departure.").

27

28

1    The Ninth Circuit has identified a number of factors the Court may consider in

2  assessing whether an award is reasonable and whether a departure from that figure is

3  warranted, including: (1) the results achieved; (2) the risk of litigation; (3) the skill

4  required and quality of work; and (4) the contingent nature of the fee and the financial

5  burden carried by the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th

6  Cir. 2002).  These factors all weigh in favor of awarding attorneys' fees in the amount of

7  $150,000.

8    **A.  *Results Achieved***

9    Under the Settlement Agreement, the average award provided to each Class

10  Member will exceed $150.00, and the Court agrees with the parties that this result supports

11  the award sought, given the narrow scope of the certified claims.  (Lindner Decl. ¶ 5, Doc.

12  225-2; Mem. P. & A. ISO Fees Mot. at 5, Doc. 225-1.)  Moreover, the fact that only six

13  class members opted-out and none objected further supports the conclusion that Class

14  counsel achieved a good result for the Class.

15    **B.  *Risk of Litigation***

16    The risk of litigation further supports this award.  This case involves complex

17  issues, and Defendants have vigorously litigated it—indeed, they have narrowed the class

18  claims at issue at both the class certification and summary judgment stages.  "Risk is a

19  relevant circumstance," *Vizcaino*, 290 F.3d at 1048, particularly in this case.

20    **C.  *Skill Required and Quality of Work***

21    This action required complex analysis of Defendants' timekeeping systems and

22  their data.  Class counsel has competently litigated this case from its inception, which is

23  further evidenced by the Settlement Agreement they obtained for the Class.

24    **D.  *Contingent Nature of the Fee***

25    Class counsel took this case on a contingent basis, fronting the expenses, and they

26  have been litigating it for more than three years.  They seek an award of 25% of the

27  common fund, which is the "benchmark" in this circuit.  This factor supports awarding the

28

10

1  fee class counsel seeks.  Moreover, this result is consistent with fee awards obtained in

2  other cases.  *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D.

3  Cal. 2010) (citing to five recent wage-and-hour class actions where district courts

4  approved attorneys' fees awards ranging from 30-33%).

5

6                                          **COSTS**

7          Class counsel first seeks approval of $25,000 to be paid to the Court-approved

8  Settlement Administrator Simpluris.  The Settlement Agreement called for $55,000 to be

9  set aside for the settlement, yet the most recent cost estimate is only $25,000.  The

10  remaining $30,000 will remain in the fund and be distributed to the Class.  (Fees Mot. at

11  11, n.4.)  The Court approves $25,000 for Simpluris, as Settlement Administrator.

12          Class counsel also seeks reimbursement of their costs and expenses in the amount

13  of $130,174.43.  (Mem. P. & A. ISO Fees Mot. at 10.)  The Court ordered Plaintiff's

14  counsel to file supplemental briefing to fully substantiate the costs they seek.  (*See* Doc.

15  227.)  Class counsel then filed a voluminous itemization of the costs they have incurred in

16  prosecuting this suit.  (*See* Doc. 228-1.)  Having reviewed these filings, the Court

17  determines that Class counsel has submitted sufficient documentation of the costs incurred.

18

19              **ENHANCEMENT TO THE CLASS REPRESENTATIVE**

20          Plaintiff applies for a $6,000 service award to compensate her for her service to the

21  class in this matter.  (Mem. P. & A. ISO Fees Mot. at 11-14.)  District courts have the

22  discretion to award incentive payments to named plaintiffs as compensation for their

23  actions taken on behalf of the class.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec.*

24  *Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  The Ninth Circuit recently emphasized that

25  district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the

26  adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, No. 11-

27  56376, --- F.3d ----, 2013 WL 1831760, at *5 (9th Cir. Apr. 22, 2013).

28

1     In light of all the facts, the Court concludes that Plaintiff is entitled to the $6,000

2  incentive award.  First, she expended substantial time and effort prosecuting this action on

3  behalf of the class, including participating in discovery, the settlement negotiations, and

4  the settlement approval process.  (Lindner Decl. ¶ 8, Doc. 225-2.)  She also took a

5  significant professional risk by serving as class representative, as her future job prospects

6  may be impaired by her involvement in this case, because she sued her former employer.

7  (*Id*.)  Finally, Plaintiff is executing a general release that will resolve her individual claims,

8  as well the class claims.[5]  (*Id.*)  Accordingly, the Court approves the $6,000 service award

9  to Plaintiff.  *Cf. Rausch v. Hartford Fin. Serv. Grp.*, No. 01-CV-1529-BR, 2007 WL

10  671334 (D. Or. Feb. 26, 2007) (granting $10,000 incentive fee award).

11

12                      **CONCLUSION**

13     For the foregoing reasons, the Court GRANTS Plaintiff's Settlement Motion and

14  Attorneys' Fees Motion.

15

16     The parties shall file a proposed judgment in conformity with this Order forthwith.

17

18

19  DATED:  June 13, 2013        JOSEPHINE STATON TUCKER

20                     JOSEPHINE STATON TUCKER
                       UNITED STATES DISTRICT JUDGE

21

22

23

24     [5] These last two facts stand in contrast to the situation in *Radcliffe*, where the claims involved
alleged violations of the Fair Credit Reporting Act brought by consumers against the major credit

25  reporting agencies.  The class representatives in *Radcliffe* were not employees or former
employees of the defendants in that case.  Moreover, the settlement agreement in *Radcliffe*

26  provided that the class representatives would receive incentive awards only if they supported the
settlement.  The Ninth Circuit found such an arrangement sufficient *per se* "to invalidate [the]

27  settlement." *Radcliffe*, 2013 WL 1831760, at *5.

28